UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RANDALL FURMAN, et al.,

      Plaintiffs,                              Case No. 2:06-cv-784
                                                 JUDGE GREGORY L. FROST
    v.                                             Magistrate Judge Mark R. Abel

DAIMLERCHRYSLER CORP.,

      Defendant.

**OPINION AND ORDER**

This matter is before the Court for consideration of a motion *in limine* (Doc. # 80) filed by Defendant, DaimlerChrysler Corporation, and a memorandum in opposition (Doc. # 83) filed by Plaintiff, Semco, Incorporated. For the reasons that follow, the Court finds the motion well taken only in part.

**II. Discussion**

**A. Standard Involved**

The Court has previously noted that the inquiry involved in and nature of a motion *in limine* decision are well settled:

> Motions in limine are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose. *See Jonasson v. Lutheran Child and Family Serv.,* 115 F.3d 436, 440 (7th Cir.1997). The court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. *Cf. Luce v. United States,* 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 463 n.4, 83 L. Ed. 2d 443 (1984) (federal district courts have authority to make in limine rulings pursuant to their authority to manage trials). Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. (citations omitted). Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely

> means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *See United States v. Connelly,* 874 F.2d 412, 416 (7th Cir.1989) (citing *Luce,* 469 U.S. at 41, 105 S. Ct. at 463) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."). *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F. Supp. 1398, 1400-01 (N.D. Ill.1993).

*Indiana Ins. Co. v. General Elec. Co.*, 326 F. Supp.2d 844, 846-47 (N.D. Ohio 2004). Cognizant of this standard, the Court shall address each of Defendant's six categories of evidence or argument to be excluded.

**B. Analysis**

*1. Religious practices, beliefs, customs, and discussions*

In the summary judgment Opinion and Order, this Court noted that "[t]he bulk of Semco's evidentiary allegations–the 'The Passion of the Christ' references, the Torah interpretation disagreement, the comments about raising children under Judaism, and other comments Chrysler references in its reply memorandum–arguably speak to *religious* discrimination, not *racial* discrimination." (Doc. # 77, at 8 (citation omitted).) The Court then noted in a footnote that "[c]ounsel should not regard this statement as expressing any opinion on whether the cited evidence could be introduced at trial as circumstantial evidence of racial discrimination. That issue is not before the Court at this time." (Doc. # 77, at 8 n.2.)

The issue is now before the Court. In the first aspect of its motion *in limine*, Defendant seeks to preclude Plaintiff's use at trial of any statements, testimony, evidence, and argument regarding the religious practices, beliefs, or customs of David Holder and Randall Furman. Defendant also asks to exclude the content of any discussions about religious subjects between

2

Holder and any witness. The rationale behind such requests is that 42 U.S.C. § 1981 targets racial, not religious, discrimination. Plaintiff agrees with the limited scope of § 1981, but argues that religion provides necessary context to the acts and statements involved in this case, as well as providing a probable basis for the alleged race discrimination.

This Court concludes that statements, testimony, evidence, and argument regarding the religious practices, beliefs, or customs of David Holder and Randall Furman, as well as religious discussions, are admissible provided Plaintiff can connect them to racial discrimination. Plaintiff cannot of course predicate liability on religious grounds, but Plaintiff can use this religion-oriented material as it relates to and informs the claim of race discrimination. In other words, if Holder's religious beliefs instill in him a dislike not just for Judaism, but also for any Jew, regardless of whether he or she observes the tenets of Judaism, then the religion-oriented material becomes relevant. There must be a credible inference that the religion leads to discrimination against Plaintiff because of race.

There are limits to this holding. For example, absent a connection to race, no reasonable factfinder could extract racial discrimination from dispute over the meaning of a theological text. Thus, it does not matter if Furman and Holder interpret a theological text differently, unless and until there is a possible inference that the meaning drawn or the fact of the dispute is somehow racially based or related. If, for example, Holder's religious beliefs lead him to blame an entire race of individuals for the death of a figure in his religion, then his religious beliefs and his interpretation of the theological text from which he derives those beliefs is relevant. But if Holder simply disagrees with how followers of Judaism interpret a theological text, without an accompanying animus toward Jews as a whole, then such evidence is not relevant. Counsel

3

should not introduce evidence of the substance of theological disputes absent the necessary link.

Counsel can, however, introduce evidence that provides context by inference to the alleged race discrimination. An example of a potentially ambiguously motivated statement can be found in Randall Furman's deposition testimony, where he asserted that David Holder had said, "We're not going to do business with you and your family." (Furman Dep. at 170.) As the Court noted in its summary judgment decision, this statement begs the question of *why*. A factfinder might draw the inference that the "why" is because Semco's owner, Randall Furman's father, is Jewish. Or, as the Court noted, another explanation might be that the answer is because Randall Furman is part of Semco and a *practicing* Jew, which means that the "why" is religious and not racial discrimination. Another explanation could be purely business driven, if Castool's products were of superior quality or cheaper to buy, or if the company's employees were easier to get along with than Plaintiff's employees. Holder's religious beliefs, comments, and discussions create context for his actions and statements. They may, in fact, even help Defendant evade liability if the religious beliefs, comments, and discussions indicate only religious discrimination.

The Court recognizes the nuanced nature of today's decision and the careful line counsel must tread in executing its application. But to reach a contrary conclusion endorsing wholesale exclusion would draw an artificial distinction between religion and race when what begins as religious intolerance can and does at times lead to racial discrimination. If history and modern times have taught nothing else, they have taught that it is certainly conceivable that a religious bias could lead to a bias against an entire race of individuals. What starts as a disagreement over belief can through evolving conflation paint an entire race of people with the broad strokes of

4

intolerance.

Whether that has occurred here is for the factfinder to decide, but this Court must recognize the possibility at this juncture. The Court thus notes that Plaintiff has drawn throughout this litigation inferences of racial discrimination arising from theological dispute–some arguably strained, but that is for the factfinder and not this Court to decide–and that the factfinder is free to draw from incidents and statements reasonable inferences evincing racial and not religious discrimination. Plaintiff draws other inferences from asserted stereotyping of Jews. Guided by an appropriate limiting instruction, the jury must discern for itself what animus, if any, to attribute to any act or statement.

The foregoing analysis informs this Court's decision on the admissibility of testimony by Robert Diersing, a witness whom Defendant specifically challenges in the motion *in limine*. Defendant challenges the admissibility of Diersing's testimony that he believed that Holder discriminated against Furman because it presents a legal conclusion. Defendant also argues that Diersing linked the alleged discrimination to religion and that admitting this testimony would confuse the jury. The Court finds it curious that Defendant would not want to place this evidence before the jury–Plaintiff's own employee opining that the discrimination Plaintiff asserts was predicated on grounds that cannot create liability–but Defendant appears to be concerned with confusing or even alienating the jury.

The Court will address the issue of juror confusion below. This leaves whether Diersing can offer an opinion and whether it is relevant. Diersing can offer an opinion that is rationally based on his perceptions and helpful to a clear understanding of his testimony or the determination of a fact and issue. Fed. R. Evid. 701. His attribution of the alleged

5

discrimination to religion is indeed relevant if religion led Holder to generalizations that led to race discrimination. It also places his testimony in context.

Obtaining Diersing's opinion is fine, but obtaining his legal opinion is not. To evade concerns about Diersing offering a legal conclusion, counsel for both sides should take care to elicit proper responses. Counsel should therefore avoid eliciting overbroad or legal responses. *See Torres v. County of Oakland*, 758 F.2d 147, 149-51 (6th Cir. 1985). Counsel must confine themselves to obtaining responses that credit this distinction. *See id.* at 151 ("The best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate."). Thus, Diersing cannot testify that Defendant, via Holder, engaged in "race discrimination" or "religious discrimination" because that would constitute an ultimate fact left to the jury. He can, however, testify that he believes, based on his personal knowledge, that Holder treated Furman (and thus Plaintiff) poorly or unfairly or whatever label would be appropriate in common or ordinary vernacular based on race and/or religion. He could testify that he believes race or religion motivated Holder's treatment of Furman and thus Plaintiff.

Diersing could even *conceivably* use the term discrimination or a variation thereof–although this would require considerable caution–provided counsel elicits a definition from him based on Diersing's understanding of the term's everyday meaning and so long as it does not appear to decide the ultimate issue of whether the "discrimination" was illegal discrimination. *See id.* ("[T]he term 'discrimination' has a specialized meaning in the law and in lay use the term has a distinctly less precise meaning."). Careful phrasing in questioning by

6

counsel should easily avoid this last, more inherently problematic route.

Turning to Defendant's concern over the use of religion to impeach Holder's character, the Court notes that Plaintiff has represented that it will not attempt such an impermissible act. This aspect of the motion *in limine* is therefore moot. The Court agrees with Plaintiff, however, that the company can use Holder's religious beliefs to demonstrate bias. *See United States v. Teicher*, 987 F.2d 112, 118 (2d Cir. 1993) ("[Federal Rule of Evidence 610] proscribes the impeachment of witnesses based upon their religious beliefs. However, inquiry into religious beliefs 'for the purpose of showing interest or bias because of them is not within the prohibition.' " (citation omitted) (quoting Fed. R. Evid. 610 advisory committee note)).

This Court is cognizant of Defendant's concern over the danger of confusing or misleading the jury. Both limiting instructions during trial and an instruction in the final jury instructions can obviate these concerns. Defendant argues that "[t]he mere use of a limiting instruction after the harm of confusing the jury with evidence referring to religion is done would be ineffective." (Doc. # 80, at 9.) This assertion gives the jury too little credit and ignores that limiting instructions are an effective tool in preventing juror confusion.

The Court therefore orders that the parties shall attempt to agree on the language of a limiting instruction that informs the jury that it cannot base liability on religious discrimination, but only on race discrimination. The parties should submit this joint proposed instruction at least by the last business day prior to the first day of trial. The limiting instruction during trial should explain to the jury what role any statements, testimony, evidence, and argument regarding the religious practices, beliefs, or customs of David Holder and Randall Furman can play in the jury's deliberations; the final jury instructions will emphasize this distinction and direct the jury

7

accordingly.  If the parties cannot agree on a sufficient limiting instruction to propose to the Court, each side must submit their own proposed limiting instruction at least by the last business day prior to the first day of trial.  The Court will take the parties' suggestion or suggestions into consideration while drafting the limiting instruction to be used.

### 2. *Future lost profits*

Defendant posits that this Court should exclude any statements, testimony, evidence, and argument regarding Plaintiff's alleged future lost profits after September 2005 because such profits are too remote and speculative.  Defendant also argues that Plaintiff cannot establish future lost profits after A.T. Kearney assumed purchasing responsibilities because Plaintiff failed to submit a proposal to supply all requisite products, which meant that Plaintiff fell outside A.T. Kearney's scope of acceptable vendors.  Because Plaintiff had no contract with A.T. Kearney, Defendant reasons, it is impossible to speculate what profits Plaintiff could have obtained for the indefinite period of time in which it would have done business with A.T. Kearney.

Characterizing as inherent and acceptable the element of uncertainty in damages calculations, Plaintiff first argues that it will be able to show that but for the alleged discrimination, its sales to Defendant would have in fact increased overall.  To support its argument, Plaintiff directs this Court to the Sixth Circuit's conclusion that "[t]he lack of a contractual commitment to purchase for a definite period of time does not render [a plaintiff's] claimed damages speculative."  *Broan Mfg. Co., Inc. v. Associated Distrib., Inc.*, 923 F.2d 1232, 1237 (6th Cir. 1991).  As the court of appeals has explained, a plaintiff "must  establish the fact of damages with *reasonable*, not absolute, certainty."  *Id.*  Without the benefit of receiving evidence, this Court therefore tentatively agrees with Plaintiff that it is able to pursue future lost

8

profit damages.

The Court also agrees with Plaintiff that the existence of A.T. Kearney as purchaser hardly cuts off Plaintiff's potential damages. In the summary judgment Opinion and Order, the Court recognized that a genuine issue of material fact over the autonomy of A.T. Kearney's decisionmaking existed:

> [N]ecessarily viewing the evidence in a light most favorable to Semco, this Court must conclude that a reasonable jury could find by inference that (1) Holder did play a role in purchasing decisions and in selecting what type or brand of tips were used, as well as in A.T. Kearney's decisionmaking, (2) Holder's role was influenced by racial animus, and (3) the stated reason for the business developments of which Semco complains therefore had no basis in fact.

(Doc. # 77, at 17.) The jury is free to conclude that these inferences are indeed facts and that Plaintiff is therefore entitled to future lost profits extending beyond that point in time at which A.T. Kearney became involved. To conclude otherwise and exclude here a category of potential damages on the basis of A.T. Kearney's unclear and as yet unresolved role would be wholly unfounded at this time.

The Court notes, however, that it recognizes that at trial, Defendant is likely to object *with more specificity* than in the motion *in limine* to Plaintiff's assumed pursuit of damages for future lost profits or their present value based on the asserted inadequacy of the foundation for these projections and whether Plaintiff has a witness able to support any asserted numbers. The Court will of course address such objections at trial, as necessary.

### 3. *Non-economic damages*

Uncertain of whether Plaintiff will seek to pursue non-economic damages, Defendant asks the Court to exclude all statements, argument, testimony, and evidence concerning such damages. In its response, Plaintiff agrees that non-economic damages are not appropriate here

9

because the only remaining plaintiff is a corporation. This aspect of the motion *in limine* is therefore moot.

### *4. Warehouse scrap and aluminum chip projects*

Defendant also seeks to exclude all statements, argument, testimony, and evidence concerning the warehouse scrap and aluminum chip projects that constituted the focus of dismissed claims in this action. Plaintiff indicates in its response that it has no intention of introducing evidence in this regard. Accordingly, this aspect of the motion *in limine* is also moot.

### *5. Retaliation*

Defendant correctly points out that this Court has previously concluded that Plaintiff has failed to assert a claim for retaliation. (Doc. # 77, at 19.) Therefore, Defendant argues, the Court should preclude "[a]ny testimony, evidence or argument that Semco or any of its employees complained to Chrysler about race discrimination or that Chrysler cancelled Semco's blanket purchase order or influenced A.T. Kearney not to choose Semco to supply [the castings plant]." (Doc. # 80, at 13-14.) Without citing the rule (and while contesting relevance), Defendant's rationale behind this aspect of the motion essentially echoes the concerns involved in Rule 403: the probative value of relevant evidence balanced weighed against the potential for unfair prejudice.

Plaintiff also opposes this aspect of defendant's motion, arguing that although the acts of Defendant that could be deemed retaliatory cannot form a retaliation claim here, they are relevant to the issue of whether Defendant knew of Plaintiff's allegations and acted with sufficient malice or reckless indifference for Plaintiff's constitutional rights. Plaintiff proposes

the use of a limiting instruction to alleviate any concerns for potential unfair prejudice or juror confusion.

The Court agrees with Plaintiff that the alleged acts of Defendant that can be considered retaliatory also inform the issue of punitive damages. The probative value of these relevant alleged acts thus outweighs the potential risk of prejudice or juror confusion, if the Court informs the jury of the proper context within which to consider the acts. The Court therefore also agrees with Plaintiff that a limiting instruction is appropriate. As outlined above in another context, the applicable procedure here is that the parties shall attempt to agree on the language of a limiting instruction that informs the jury that retaliation (and any retaliatory acts presented) cannot be a basis for liability in this action. The parties should submit this joint proposed instruction at least by the last business day prior to the first day of trial. If the parties cannot agree on a sufficient limiting instruction to propose to the Court, each side must submit their own proposed limiting instruction at least by the last business day prior to the first day of trial. The Court will take the parties' suggestion or suggestions into consideration while drafting the limiting instruction to be used.

### 6. Assets

Defendant argues that unless and until Plaintiff presents sufficient evidence at trial to establish liability for punitive damages, the Court should exclude all statements, argument, testimony, and evidence concerning the new worth and assets of the Kokomo Casting Plant. Defendant also argues that in the event the Court permits consideration of such information and argument at any point, the Court should limit the net worth and asset information and argument to only the plant and not permit the jury to consider the net worth and assets of Chrysler LLC as

a whole. The rationale behind this last argument is that Plaintiff's case involves the employees of the plant and its managers, not corporate-level decisionmaking.

Plaintiff of course disagrees with both arguments. The company argues that although it can indeed only present evidence of net worth and assets in regard to punitive damages, it is entitled to do so during the presentation of its own case. Plaintiff again suggests a limiting instruction, although it does not discuss what such an instruction should state. Additionally, Plaintiff asserts that because Defendant has failed to assert that it is not a proper party or that there is a distinction between Chrysler and its agent, the plant, there is no basis for excluding Chrysler's net worth and assets.

This Court concludes that Plaintiff cannot introduce evidence of Defendant's net worth or assets unless and until Plaintiff demonstrates a *prima facie* case for punitive damages. Given the Court's gatekeeper role in this regard, there is no need for a limiting instruction at this time, although the Court would entertain any suggestions by counsel for either side as to the need for and content of any such instruction.

The Court also holds that the net worth and assets introduced need not be limited to the Kokomo Casting Plant. Defendant has not sought throughout the entire course of this litigation to identify the plant as such a wholly separate entity and has failed to present this Court with any authority supporting its request for such distinction now.

### III.  Conclusion

The Court **GRANTS IN PART** Defendant's January 8, 2008 motion *in limine* as set forth above.  (Doc. # 80.)  As with all *in limine* decisions, these rulings are subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.  Accordingly, counsel should discuss first with the Court the use of any material or argument that might fall within the categories designated herein as not applicable to the facts of this litigation before referencing or introducing such material or argument at trial.

**IT IS SO ORDERED**.

       /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE